

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WALTER RUGGLES, )
)
    Plaintiff, )
)
v. ) No. 04 C 7047
)
JO ANNE B. BARNHART )
Commission of Social Security, )
)
    Defendant. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Walter Ruggles' ("Ruggles") motion for summary judgment and on Defendant's motion for summary judgment. For the reasons stated below, we deny Defendant's motion for summary judgment and we grant Ruggles' motion for summary judgment and remand this action.

## BACKGROUND

On August 16, 2002, Ruggles applied for disability and disability insurance benefits ("Application"). A review of the record reveals that Ruggles began regularly consuming alcohol in the 1960s. (AR 60). He claims that he also had some drug dependency problems while serving in the Marine Corp. between

1

1966 and 1972. (AR 60). From 1986 until the early 1990s, Ruggles was the President and CEO of a paper company. The paper company was closed down in 1991. Ruggles has been diagnosed with bone cancer and diabetes. He has also suffered a stroke, a seizure, two heart attacks, and has had to undergo various heart related operations such as having an angioplasty. He has also been treated by psychiatrists such as Dr. Greendale ("Greendale") for depression. Ruggles told Greendale that the depression stems from the fact that Ruggles gave up his paper business in 1991 because his mill flooded. Ruggles also indicated that he was depressed because his mother died, his father-in-law died, his wife divorced him, and he filed bankruptcy. Ruggles claims to continue to suffer from physical and mental ailments and claims to be limited by the side effects of the medications that he is taking. Ruggles is 6 feet tall, weighs approximately 290 pounds and has been diagnosed as obese. (AR 268).

Ruggles alleges that beginning June 19, 2002, he had been unable to work due to his impairments and Ruggles applied for disability and disability insurance ("Application"). The Application was denied originally and denied again upon reconsideration. Ruggles then was afforded a hearing before an administrative law judge ("ALJ"). On January 6, 2004, the ALJ issued a decision, concluding that Ruggles was not entitled to disability or disability insurance and that Ruggles could go find work as a telemarketer. The Appeals Council denied Ruggles' request for review and Ruggles is now before this court appealing the ALJ's decision.

## LEGAL STANDARD

A reviewing court will uphold an ALJ's decision if it is supported by "substantial evidence" in the record and the ALJ applied the correct legal standards. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). The Seventh Circuit defines "[s]ubstantial evidence" as what a "reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). When determining if substantial evidence exists, the court must review the record as a whole but is not allowed to substitute its judgment for the ALJ's by "reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Williams v. Apfel*, 179 F.3d 1066, 1071-72 (7th Cir. 1999). Deference should be given to an ALJ's determinations relating to credibility and should be reversed only if the determinations are "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)(quoting *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)). By contrast, the ALJ's legal conclusions are reviewed de novo. *Nelson v. Bowen*, 855 F.2d 503, 506 (7th Cir. 1988); *Aidinovski v. Apfel*, 27 F.Supp.2d 1097, 1101 (N.D. Ill. 1998). An ALJ must provide some explanation that would allow the parties to understand his reasoning for his decision. *See Clifford*, 227 F.3d at 872 (stating that "[w]hile the ALJ is not required to address every piece of evidence, he must articulate some legitimate reason for his decision. . . [and] he must build an accurate and logical bridge from the evidence to his conclusion.").

## DISCUSSION

The Commissioner of the Social Security Administration employs a five-step analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f); *Rice v. Barnhart*, 384 F.3d 363, 365 (7th Cir. 2004). In the first two steps the ALJ determines "whether a claimant is not presently working, and second, whether the complained of impairment(s) are of the required duration and significantly limit the claimant's ability to work." *Id.*; 20 C.F.R. §§ 404.1520(a)-(c), 416.920(a)-(c). In step three the ALJ compares evidence of impairments with "a list of impairments presumed severe enough to preclude any gainful work." *Rice*, 384 F.3d at 365; 20 C.F.R. pt. 404, subpt. P, App. 1. If the claimant's impairment "meets or equals one of the listed impairments, the claimant qualifies for benefits and no further inquiry is necessary." *Rice*, 384 F.3d at 365; 20 C.F.R. §§ 404.1520(d), 416.920(d). However, if the claimant's impairment is not sufficient under step three, the court proceeds on to steps four and five. *Rice*, 384 F.3d at 365. In the fourth and fifth steps of the analysis, the court determines whether the "claimant's residual functional capacity," which is defined as the tasks "a claimant can still do, despite his or her limitations," *Id.* at n.1; 20 C.F.R. § 404.1545(a), "will allow the claimant to pursue her past work." *Rice*, 384 F.3d at 365; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant's impairment "precludes the performance of past work, the claimant's RFC, age, education, and work experience are considered to determine if other work exists that would accommodate the claimant." *Rice*, 384 F.3d at 365; 20 C.F.R. §§ 404.1520(f), 416.920(f).

In the instant action, the ALJ concluded that Ruggles had met the first two steps. The ALJ concluded that Ruggles' impairment did not satisfy step three, finding that Ruggles' impairments were not equivalent to a listed impairment. Proceeding to step four of the analysis, the ALJ determined that Ruggles' residual functional capacity limitations precluded him from: lifting more than 20 pounds occasionally or more than 10 pounds frequently; standing and/or walking for more than a total of two hours in an 8-hour workday; using the left upper extremity for repetitive grasping or fine manipulations; climbing ropes, ladders, or scaffolds; stooping, crouching, kneeling or crawling more than occasionally; climbing stairs more than occasionally; concentrated exposure to dangerous machinery; concentrated exposure to activities involving unprotected heights; performing jobs in environments containing respiratory irritants in concentrated levels; performing work that requires good bilateral vision; and performing complex job tasks. (AR 27). Based upon this assessment of Ruggles, as well as the testimony of a vocational expert, the ALJ concluded that Ruggles' impairments did not preclude him from performing his past relevant work as a telemarketer.

I. Listed Impairments

Ruggles argues that the ALJ failed to adequately address the evidence in regard to Ruggles' impairments by concluding that Ruggles' impairments were not equivalent with a listed impairment. Although the ALJ specifically adopted Dr. Schiff's ("Schiff") expert testimony in her ruling, (AR 25), the ALJ failed to

5

properly address and consider all of the testimony presented by Schiff. Schiff testified that Ruggles suffered from depression. (AR 74). Schiff also testified that Ruggles walks with a wide base because he has trouble keeping his balance. (AR 77). Schiff also testified that he was concerned that the Xanax that Ruggles had been taking might affect his mental coordination. (AR 71-72). Schiff also testified that Ruggles may have "had some decline from his previously – probably higher level of intellectual function." (AR 74). Schiff testified that Ruggles' depression "gets to be a bit of a problem" because there was a "mixture of difficulties complicated by medication, and complicated by physical trouble." (AR 75). Schiff testified that he believed that Ruggles has "decreased energy." (AR 76). Schiff also testified that he believed that Ruggles "has difficulty concentrating or thinking," noting that this condition might be the result of the medications that Ruggles is taking. (AR 76). Schiff testified that Ruggles suffered from moderate to marked problems with "[m]aintaining pace, persistence . . . depending on what time of day it is." (AR 76). The ALJ pressed Schiff to state whether or not Schiff believed that Ruggles' impairments were the equivalent of any of the listed impairments and Schiff initially responded in the negative. However, Schiff then further elaborated that when considering all of the combined factors such as the medications taken by Ruggles, neurological trouble, physical weakness, Ruggles is much closer to the listed impairments relating to concentration and pace. (AR 77). Schiff did not testify, as the ALJ apparently concluded, that the factors brought Ruggles closer to the listed impairments, but still were not sufficient to find Ruggles disabled. Schiff's

testimony read as a whole, clearly indicates that Schiff did not consider any one impairment as being equivalent to any listed impairment, but when asked to comment on the combined effects of all of the factors, Schiff was not willing to provide a definite answer as to whether or not Ruggles' impairments were sufficient. (AR 77). Schiff ended his questioning with the ALJ by noting that, according to Ruggles, Ruggles can only work a four hour day before he runs out of energy. (AR 77). This statement by Ruggles was consistent with Schiff's conclusion that Ruggles had difficulties with maintaining pace and persistence depending on the time of day. Schiff was also questioned by Ruggles' attorney regarding whether Schiff found reasonable Ruggles' claim that after four hours of work, he runs of out energy and needs to go to bed due the combined effects of his physical and mental ailments and the effects of his medications. (AR 78). Schiff testified that he found Ruggles' claim to be a reasonable one in light of the records and testimony that he was presented, noting that "there's an awful lot of chemicals being consumed at the same time." (AR 78). Schiff also testified that a couple of the medications taken by Ruggles could make him tired and that multiple sedating medications "'enhance each other[']s" sedating effects. (AR 80). Schiff testified that alcohol would also enhance the sedating effects of the medications. (AR 80). The ALJ failed to properly consider the testimony presented by Schiff, only considering what the ALJ wanted to hear and disregarding the remainder of Schiff's testimony. Dr. Hare also reported that Ruggles suffered from the cardiac symptoms of fatigue and dyspnea. (AR 279). The Seventh Circuit has made it clear that "[a]n ALJ must consider all relevant

7

evidence and may not select and discuss only that evidence that favors h[er] ultimate conclusion." *Binion on Behalf of Binion v. Charter*, 108 F.3d 780, 788-89 (7th Cir. 1997). In the instant action, the ALJ seems to "pick and choose among the pieces of evidence," particularly in regards to Schiff's testimony, much as the ALJ had improperly done in *Binion*. *Id.* at 788-89.

We also note that Libby K. Skolnik ("Skolnik"), wrote a letter to the Social Security Administration which is part of the administrative record. Ruggles testified that Skolnik was merely a friend and not a romantic interest, and that Skolnik took him into her residence and cared for him after he had his stroke. (AR 58). Skolnik wrote that Ruggles was once a "vibrant, hard working, socially active man. . . ." (AR 222). She claims, however, that as Ruggles' health deteriorated he began to experience depression and anxiety. (AR 222). Skolnik claims that since Ruggles has had health problems, he has not participated in the social events that he used to attend with Skolnik. For instance, Ruggles refuses dinner and party invitations and refuses invitations to go to the movies and does not go out of his home for social interaction. (AR 222). Skolnik claims that Ruggles shakes and has problems with his eyesight and balance as a result of his stroke. (AR 222). Although Skolnik does not claim to be a physician, the symptoms that she reports in her letter and the references to Ruggles' past and then current social activity are pertinent evidence that should have been considered by the ALJ.

The ALJ also did not adequately explain why she concluded that Ruggles' impairments did not equal certain listed impairments. Ruggles also correctly points

out that, based upon the evidence presented, the ALJ clearly should have provided some analysis regarding Ruggles' impairments to listing 4.03 for hypertensive disease and listings 4.02 and 4.04 relating to cardiac conditions. *See Barnett v. Barnhart*, 381 F.3d 664, 668-69 (7th Cir. 2004)(stating that "[i]n considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing."). The ALJ also erred in failing to sufficiently address in her analysis Ruggles' obesity. Ruggles has thus shown that the ALJ erred in her analysis of the listed impairments and that the ALJ's conclusion is not supported by the s]ubstantial evidence.

II. Residual Capacity

Ruggles also argues that the ALJ erred in her determination that Ruggles' residual functional capacity would allow Ruggles to pursue his past work as a telemarketer. The evidence clearly showed that Ruggles could not sustain work activity for extended periods of time. Ruggles claimed that after four hours of work he runs out of energy and needs to go to bed due the combined effects of his physical and mental ailments and the effects of his medications. (AR 78). Schiff found such a claim to be reasonable. (AR 78). The opinion of Dr. Hare also clearly indicates that Ruggles' limitations were more severe than were found by the ALJ and corroborate Schiff's conclusion that Ruggles would have trouble keeping his concentration and engaging in prolonged sustained work. The ALJ erred by failing to adequately address and take into consideration Ruggles' inability to sustain work

9

activity. *See Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004)(finding that the ALJ erred because "[h]e failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week."). In addition, although the ALJ pointed to Ruggles' past work as a telemarketer, and concluded that he could simply return to that line of work, the ALJ did not address the evidence presented in a letter from Ruggles' past employer for whom he worked as a telemarketer. Ruggles' former employer indicated that Ruggles "does an excellent job for us." (AR 156). However, his employer also indicated that Ruggles was unable to perform the job more than four hours per day, three days a week. (AR 156). Ruggles' past employer also indicated that when Ruggles works longer hours "his performance quickly declines," that he has tried to work longer, but that "he simply is not able to perform as needed." (AR 156). Thus, the ALJ's reasoning that Ruggles could simply return to his past work as a telemarketer is flawed, particularly in the absence of the failure to address the evidence presented by Ruggles' former employer.

Ruggles also argues that the ALJ erred in the presentation of the hypothetical questions to the vocational expert. Generally, any hypothetical question posed by an ALJ to a vocational expert "must include all limitations supported by medical evidence in the record." *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004)(stating that "[t]he hypothetical need not include every physical limitation, provided that the vocational expert had the opportunity to learn of the applicant's limitations through, for example, an independent review of the medical records or

through other questioning at the hearing. . .[but,] [n]evertheless, where the hypothetical does not include all of the applicant's limitations, [the court] must have some amount of evidence in the record indicating that the vocational expert knew the extent of the applicant's limitations."). In the instant action, the ALJ herself found that Ruggles had moderate limitations in his ability to concentrate on matters, to perform matters for extended periods at a certain pace, and to function socially. (AR 22-25). Yet, the only limitation regarding mental limitations included by the ALJ in the hypothetical question was a preclusion of complex jobs. (AR 84). The ALJ also failed to include in the hypothetical question the physical limitation of the inability to lift items above shoulder height. Neither does the evidence indicate that the vocational expert knew the pertinent limitations.

Ruggles also argues that the ALJ failed to consider the combined effect of his impairments. An ALJ is required to consider all of "the applicant's medical situation as a whole," *Barrett v. Barnhart*, 355 F.3d 1065, 1068-69 (7th Cir. 2004), and thus must "consider the *aggregate* effect of this entire constellation of ailments-including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). Schiff, for example, emphasized the substantial cumulative effect that would result from Ruggles' physical and mental impairments and the side effects of the medications. (AR 75, 77). Despite this evidence and the evidence regarding a wide variety of impairments and medications taken by Ruggles, the ALJ did not address the cumulative effect of such factors.

## III. Credibility

Ruggles argues that the ALJ erred in evaluating the credibility of testimony. An ALJ's credibility determination is entitled to substantial deference and "there has developed a firm and tenable rule of law 'that an ALJ's credibility determination will not be disturbed unless it is "patently wrong."'" *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)(quoting *Cannon v. Apfel*, 213 F.3d 970, 977 (7th Cir. 2000)). The ALJ concluded that Ruggles' activities were not as limited as would be considering his alleged impairments. The ALJ concluded that Ruggles' allegations regarding his symptoms were not consistent with the medical evidence and therefore discredited Ruggles' testimony. However, the ALJ did not offer sufficient explanation for such a conclusion and the record indicates that the medical evidence clearly supports Ruggles' claimed symptoms.

## IV. Logical Bridge to Conclusions

Ruggles argues that the ALJ made certain conclusions without providing the bases for those conclusions and that such conclusions are not supported by any evidence. As is explained above, an ALJ must provide some explanation that would allow the parties to understand her reasoning for his decision. *See Clifford*, 227 F.3d at 872 (stating that "[w]hile the ALJ is not required to address every piece of evidence, he must articulate some legitimate reason for his decision. . . [and] he must build an accurate and logical bridge from the evidence to his conclusion."). Further, in reviewing the decision, the court must confine its review to the explanation and reasoning given by the ALJ. *Steele*, 290 F.3d at 941. In the instant action, the ALJ

concluded that "the claimant's use of medications does not suggest the presence of impairments that are more limiting than those found in this decision." (AR 26). However, the ALJ did not sufficiently explain the bases for such a conclusion. The ALJ also concluded that the record indicated that Ruggles' alleged impairments were at the same level of severity as they were before the alleged onset date. (AR 26). However, the ALJ does not point to any portion of the record that would support such a conclusion. The ALJ also concluded that "the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual." (AR 26). Yet, the ALJ failed to point to the medical evidence to support such a conclusion. The Seventh Circuit has warned administrative law judges that "[t]he Commissioner's determination must be based on testimony and medical evidence in the record" and that "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). The ALJ has in several instances, imposed her own judgment in regards to medical findings and has reached beyond the medical evidence presented by the qualified medical experts in this action.

## CONCLUSION

Based on the foregoing analysis, we grant Ruggles' motion for summary judgment, deny Defendant's motion for summary judgment, and remand this action to the ALJ.

_Samuel Der-Yeghiayan_
Samuel Der-Yeghiayan
United States District Court Judge

Dated: July 28, 2005